# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

|  |  |
|---|---|
| ROBIN TAYLOR, on behalf of herself and others similarly situated,<br><br>     Plaintiff,<br>v.<br><br>SUNTUITY SOLAR LIMITED LIABILITY COMPANY,<br><br>     Defendant. | No. 8:23-cv-00694-MSS-AEP |

**PLAINTIFF'S OMNIBUS RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION
<u>AND MOTION TO STAY OR BIFURCATE DISCOVERY</u>**

The Court should deny Defendant Suntuity Solar's motion to compel arbitration because Defendant waived the right to compel arbitration by litigating the case for nearly six months before first raising arbitration, including by seeking a determination of the merits of its consent defense and participating in discovery.

But even if Suntuity didn't waive the right to compel arbitration, the Court should deny its motion because Suntuity has not carried its burden to demonstrate the existence of a valid agreement to arbitrate. There is no admissible evidence that Plaintiff visited the website Suntuity claims she visited or that the website's terms were what Suntuity claims they were at the time (*see, e.g.,* Motion at n.1).

But even if Suntuity did carry its burden to show the existence of an arbitration agreement based on a disputed website visit regarding which Suntuity has no admissible evidence, the Court should still deny its motion because Suntuity is not a signatory or non-signatory-beneficiary of the purported arbitration agreement between Plaintiff Taylor and the non-party website operator on which Defendant's motion is entirely predicated.

Defendant is not an express-non-signatory beneficiary of the purported arbitration agreement between Plaintiff Taylor and the website operator, which is limited to claims between Plaintiff and the website operator. Nor does the agreement containing the arbitration agreement purport to obtain consent for calls made by or on behalf of the Defendant. This is important, because the Telephone Consumer Protection Act requires that consent specifically identify the *seller* with permission to make or have made on its behalf calls. Defendant cannot therefore argue that they are

an intended-beneficiary of any purported agreement between Plaintiff and the website operator.

As a result, Plaintiff Taylor's claims do not derive from and are not intertwined with the website operator's conduct or purported agreements with the website operator. Plaintiff's claims arise from unsolicited telemarketing calls, not any interaction with the website operator's website—a website which does not even purport to provide consent for calls made by or on behalf of Defendant, the *seller* under the TCPA for the calls at issue.

There is therefore no basis to enforce any purported agreement between the website operation and Plaintiff to compel arbitration for the benefit of Defendant—a non-signatory to the agreements and otherwise a non-beneficiary of and non-party to the supposed dealings between Plaintiff Taylor and the website operator.

And because all of the relief sought in Suntuity's motion to stay or bifurcate is predicated on the same purported website visit at issue in the motion to compel arbitration, in the absence of any evidence that Plaintiff visited the website, that if she did the website's terms involved consent to be called, and that, if it did, the consent provision included Suntuity as a beneficiary, there is likewise no basis to curtail discovery that has been ongoing for months in any of the manners Suntuity seeks.

compel arbitration is wholly meritless, the Court should also deny Suntuity's motion to stay discovery which has been progressing for months.

## BACKGROUND

"Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

"The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is

a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021 to also protect individuals from unwanted telemarketing calls. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a). A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i). Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation. The FTSA similarly protects individuals called on the National Do Not Call Registry.

This case involves a campaign by Suntuity to market its services through the use of automated telemarketing calls, including to telephone numbers on the National Do Not Call Registry, in violation of the TCPA and FTSA.

## PLAINTIFF'S ALLEGATIONS

Ms. Taylor is the user of the telephone number (941) 224-XXXX. Taylor Dec. ECF No. 36-1 at ¶ 3. That telephone number has been on the National Do Not Call Registry since 2009. *Id.* at ¶ 4. Despite that, she repeatedly received telemarketing calls that were made for the purpose of promoting Suntuity Solar's products and services, including on at least January 31 and February 8, 2023. *Id.* at ¶ 5. The calls both came from Caller ID (941) 213-5036. *Id.* at ¶ 6.

Ms. Taylor did not want to receive either call and did nothing to solicit them. *Id.* at ¶ 7. In fact, Ms. Taylor specifically contests the consent Suntuity purports to have had for a number of reasons. First, she does not recognize and has never visited the website at issue. *Id.* at ¶¶ 18-19. Second, the IP address for the purported website visit is in Indiana, and the Plaintiff has never been to Indiana; instead, her IP address is in Florida, where the Plaintiff was during the date of the purported website visit. *Id.* at ¶¶ 21-25. Finally, the Plaintiff has never owned the property that the Defendant claimed she submitted an inquiry about. *Id.* at ¶ 20.

Both telemarketing calls followed the same script. *Id.* at ¶ 10. During both calls she was initially provided a generic, fake name, "solar of America." *Id.* at ¶ 11. During both calls, she was asked questions so the caller could determine if she qualified for

their solar services. *Id.* at ¶ 12. She was asked if she was a homeowner, what her credit score was, and where she lived. *Id.* at ¶ 13.

In order to identify the legal entity behind this call, Ms. Taylor interacted with the telemarketer as she understood from her past experience dealing with illegal telemarketers that a transfer would then be made to someone who would need to identify the company to attempt to complete the sale, so that company could be held to account for its illegal actions. *Id.* at ¶ 14. A transfer was subsequently made, and after engaging the caller, the only real company name identified as part of the calls was Suntuity. *Id.* at ¶¶ 15-16.

The calls were made using the Ytel dialer. *See* Amended Complaint at ¶ 26. The Ytel dialer is a predictive dialer. *Id.* at ¶ 27. A predictive dialer is a cloud based dialer that selects telephone numbers from a preloaded list, dials them, and then connects them to a live call center employee only if and when they are answered by a consumer. *Id.* at ¶ 28. Telephone numbers that are automatically dialed and then called but that are not answered are never connected to a live call center employee. *Id.* at ¶ 29. During each call, there was a noticeable delay from when the Plaintiff answered until when the call center employee to whom the call was connected by the Ytel dialer as a result of the Plaintiff answering spoke. *Id.* at ¶ 30.

Defendant's unwanted telemarketing calls to Plaintiff harmed her because (1) they were an annoyance, nuisance, and invasion of privacy, (2) they occupied her phone line and (3) they disturbed the use and enjoyment of her phone. *Id.* at ¶ 41; Taylor Dec. at ¶ 17.

Based on the automated calling conduct, the Plaintiff is pursuing this action on behalf of three classes. *See* Amended Complaint at ¶ 42.

## DEFENDANT'S MOTION TO COMPEL ARBITRATION FAILS

### A.    <u>Suntuity Waived the Right to Compel Arbitration</u>

Defendant has waived its right to compel arbitration by participating in the litigation for nearly 6 months before first invoking arbitration, including by seeking a determination of the merits of its consent defense.

More specifically, Defendant first appeared in the litigation on April 24, 2023. *See* ECF nos. 7-9.

On June 1, 2023, Defendant filed a motion to dismiss Plaintiff's original complaint demanding that the Court make a merits determination, find that Plaintiff consented to be called, and dismiss the case for lack subject matter jurisdiction. ECF no. 17.

Contemporaneously, Defendant participated in the preparation of a case management report that did not reference arbitration. *See* ECF no. 18. Instead, Defendant proposed a schedule involving an initial determination by the Court regarding the consent issue with, if necessary, a corresponding period of jurisdictional discovery, which was then to be followed by "bifurcation of class and merits discovery for judicial economy." *Id*. at 2-3.

On August 11, 2023, Defendant filed a motion to dismiss the amended complaint again seeking a ruling on the viability of its consent defense. ECF no. 25.

On August 16, 2023, Defendant served its responses to Plaintiff's first set of discovery without objecting on the basis of arbitration.

On September 5, 2023, the parties conferred regarding Defendant's discovery responses. At the time, although Defendant stated that it would be filing a motion to limit the scope of discovery to Defendant's defenses to Plaintiff's claim, it again failed to raise arbitration.

On September 29, 2023, Defendant filed a third iteration of its motion to dismiss seeking dismissal based on its consent defense. ECF no. 32.

On October 12, 2023, as part of the parties' ongoing conferral regarding Defendant's discovery responses, Defendant provided Plaintiff with a proposed ESI protocol and protective order.

On October 16, 2023, Plaintiff provided edits to the protective order and commented on the ESI protocol.

On October 20, 2023, nearly 6 months after it first appeared in the action, and after it filed three motions to dismiss aimed at the merits of Plaintiff's claim and participated in discovery, for the first time, Defendant raised the issue of arbitration.

Under theses circumstances, having actively litigated the merits of the case and participated in discovery for months without protestation, Defendant has waived its right to compel arbitration as to Plaintiff.

In determining waiver, "the correct standard to be applied is a totality of the circumstances test that determines whether the Defendant acted inconsistently with its contractual right to arbitration. To determine whether the right to arbitrate has been

waived, the court considers whether Defendant substantially participated in the litigation as one factor in a holistic analysis of whether Defendant, through participation in this case or by any other action or inaction, waived its right to arbitrate." *Amargos v. Verified Nutrition, LLC*, No. 22-cv-22111-BLOOM/Otazo-Reyes, 2023 U.S. Dist. LEXIS 16262, at *11-12 (S.D. Fla. Jan. 30, 2023).

Although there are circumstances in which a defendant can file a motion to dismiss without waiving the right to compel arbitration, this is not one of them. Although Defendant's motions to dismiss are disguised as jurisdictional motions, they seek a ruling as to the most common affirmative defense in TCPA cases—express consent. "In an action under the TCPA, consent functions as an affirmative defense to liability and not as an issue of constitutional standing." *Weister v. Vantage Point AI*, LLC, No. 8:21-cv-1250-SDM-AEP, 2022 U.S. Dist. LEXIS 139642, at *12 (M.D. Fla. Aug. 3, 2022) (cleaned up).

And defendants that file motions to dismiss aimed at the merits waive the right to compel arbitration. *See, e.g., Davis v. White*, 795 F. App'x 764, 769 (11th Cir. 2020) ("The sewer company's arguments in response are unconvincing. The sewer company claims that it never sought a ruling on the merits and that a party may file a motion to dismiss without waiving the right to arbitrate. We agree to the extent that not every motion to dismiss is inconsistent with the right to arbitration. Motions to dismiss may not be inconsistent with an agreement to arbitrate where the party seeks dismissal on non-merits grounds, where the party seeks dismissal of a frivolous claim, or where the motion seeks to separate arbitrable from non-arbitrable claims. But here, the sewer

company's motions to dismiss, as well as its arguments that amendment of the complaints would be futile and its pursuit of appeals with this Court, sought to resolve the parties' entire dispute on the merits." (cleaned up)); *Hurst v. Monitronics Int'l, Inc.*, No. 1:15-CV-1844-TWT, 2016 U.S. Dist. LEXIS 16032, at *4 (N.D. Ga. Feb. 10, 2016) ("By seeking a ruling on the merits, a transfer for consolidated proceedings, and a stay for Article III jurisdictional concerns, Monitronics has acted inconsistently with an intent to arbitrate and these actions have caused prejudice to the Plaintiff.").

This is particularly true when the defendant also participates in months of discovery without ever raising the issue of arbitration. *See, e.g., Garcia v. Acosta Tractors, Inc.*, No. 12-21111-CIV-SIMONTON CONSENT, 2013 U.S. Dist. LEXIS 16709, at *17 (S.D. Fla. Feb. 7, 2013) ("The Court further concluded that the record revealed that the defendants actively litigated the case by participating in discovery, successfully obtaining an extension of the discovery period and trial date, and engaging in discovery motions practice. The court additionally noted that in the joint status report, the Defendants represented to the Court that they were participating in discovery, and did not mention the possibility of arbitration."); *Stanley v. Kahn & Assocs., LLC*, No. 8:08-cv-2095-T-26TGW, 2009 U.S. Dist. LEXIS 127168, at *3 (M.D. Fla. June 2, 2009) ("Now, almost eight months after Plaintiff filed her complaint, and during the middle of the discovery period, Defendant invokes its contractual right to arbitration. The Court determines, however, that given the totality of the circumstances, Defendant has waived that right by failing to raise the issue of arbitration at the earliest

possible stages of the proceedings and by announcing its intention to engage in the full panoply of discovery authorized by the Federal Rules of Civil Procedure.").

Ultimately, under the totality of the circumstances here, Defendant has waived its right to compel arbitration.

### B.     The Parties did not "Clearly and Unmistakably" Agree to a Delegation Provision

The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527, 202 L. Ed. 2d 480 (2019). These agreements are commonly called "delegation" provisions. *See, e.g., Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010); *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1335 (11th Cir. 2016); *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015). Yet "[c]ourts should not assume that the parties agreed to" a delegation provision "unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 944 (1995) (quotation omitted).

Suntuity's reliance on *Schein* is misplaced. Indeed, *Schein* considered the very narrow question of whether there is a "wholly groundless" exception to the FAA. *See Schein*, 139 S.Ct. 524 ("The question presented in this case is whether the 'wholly groundless' exception is consistent with the Federal Arbitration Act. We conclude that it is not."). The Supreme Court considered, even when a contract delegates the arbitrability question to an arbitrator, whether a federal court

may "short-circuit the process" and decide the arbitrability question "themselves if the argument that the arbitration agreement applies to the particular dispute is 'wholly groundless.'" *Id.* at 528. Indeed, *Schein* explains, "To be sure, before referring a dispute to an arbitrator, *the court determines whether a valid arbitration agreement exists. See* 9 U. S. C. § 2. *But if a valid agreement exists*, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.* at 530 (emphasis added). Under *Schein* and the FAA, the Court must first determine whether a valid arbitration agreement exists. *Holiday Isle Owners Ass'n v. Certain Underwriters at Lloyd's London*, No. 21-00512-JB-B, 2022 U.S. Dist. LEXIS 106594, at *14-15 (S.D. Ala. June 15, 2022).

Here, as discussed above and in more detail below, there is a flat dispute that (a) the Plaintiff entered into any arbitration agreement at all and (b) that Suntuity could be a beneficiary under that agreement, since it is undisputed that it is a non-signatory. As such, there is no clear and unmistakable agreement to delegate the dispute regarding the arbitration.

### C.   Suntuity Fails to Carry Its Burden to Demonstrate the Existence of an Agreement to Arbitrate

Suntuity fails to carry its burden to demonstrate the existence of a binding arbitration agreement involving the Plaintiff, which is the first prerequisite to compelling arbitration. In fact, Suntuity Solar does not submit a declaration from anyone regarding any of the evidence that it relies upon to compel arbitration.

- 12 -

The only document relied upon by Suntuity Solar to demonstrate the Plaintiff purportedly visited the website LowerMyBills.com is a "Jornaya Report", which itself is unauthenticated. And this unauthenticated document is not evidence that Plaintiff visited the website. Indeed, as Jornaya has previously provided averred in another case:

> Jornaya's technology cannot determine whether data was entered by an individual or a bot.
>
> If the data was entered by an individual, Jornaya's technology does not verify the identity of the individual.

Jornaya Declaration [attached as Exhibit 1]; *see also* Matthew Sag & Jake Haskell, *Defense Against the Dark Arts of Copyright Trolling*, 103 IOWA L. REV. 571, 590–91 (2018) ("IP addresses are not people.").

In a similar fashion, Suntuity has no admissible evidence regarding what the website's terms or arbitration agreement were on the date of the purported website visit. *See, e.g.,* Motion at n.1.

Consistent with Suntuity's failure to obtain a declaration from LowerMyBills.com in connection with this motion substantiating authenticating the website visit or the website's terms or arbitration agreement on the date of the visit, Plaintiff issued a subpoena to LowerMyBills.com and could not get the company served. This Court should not enforce an arbitration provision related to a visit to a website from a company that did not authenticate evidence relating to the purported website visit or arbitration agreement, and cannot because it is not operational.

As a result, Suntuity fails to carry its initial burden of demonstrating the existence of an agreement to arbitrate and the motion should be denied on this basis alone.. *See e.g. Agostino v. Ally Fin. Inc.,* No. 8:18-cv-1202-T-36TGW, 2018 U.S. Dist. LEXIS 195764, at *8 (M.D. Fla. Nov. 16, 2018) ("Ally must submit admissible evidence to support its Motion. And because Plaintiff contests whether an agreement to arbitrate exists, the Court will analyze the merits of the Motion under a "summary judgment-like" standard… Ally has not met its burden to provide competent evidence upon which this Court can rely to find that either an agreement to arbitrate exists, or that Ally is an assignee entitled to enforce the arbitration agreement. The Court is unpersuaded by Ally's arguments regarding self-authenticating documents…The RISC is not in an admissible form because no person authenticates it or establishes it as Ally's business record or otherwise meets an exception to the hearsay rule.").

### D.    Defendant is Not a Signatory or Non-Signatory-Beneficiary of any Purported Agreement Between Plaintiff and LowerMyBills.com

The section of the website operator's TOU that Defendant seeks to invoke to compel arbitration reads as follows:

> "All claims, disputes or controversies between [the user] and LMB, and parents, affiliates, subsidiaries or related companies" [is subject to] "final and binding arbitration."

*See* Motion at *6.

Suntuity tries to claim that it is a related company because it's telemarketing vendor purchased data that purportedly originated at this website and them made

telemarketing calls on Suntuity's behalf. This does not make Suntuity a related company to LowerMyBills.com.

"'Related company' means essentially the same thing as 'affiliated company.' (Cambridge Business English Dict. [defining 'related company' as 'a company that controls or is controlled by another company, often one that is in the same business group'].)" *Grande v. Eisenhower Med. Ctr.*, 44 Cal. App. 5th 1147, 1166, 258 Cal. Rptr. 3d 324, 338 (2020)

Suntuity has not shown that it is controlled by or controls LowerMyBills.com or that it is in the same business group. And that's because it isn't.

While the scope of the claims subject to arbitration with LowerMyBills.com is broad, the broad scope of the arbitration provision does not broaden the parties to the arbitration agreement that may have an obligation to arbitrate claims between them. There is nothing in this arbitration provision that requires the Plaintiff to arbitrate claims directly against Suntuity Solar, who isn't mentioned in the agreement. Arbitration, "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (arbitration may be compelled "only where the court is satisfied that the parties agreed to arbitrate *that dispute*") (emphasis in original). This rule stems from the "first principle" that arbitration is "strictly a matter of consent," and thus "is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock*, 561 U.S. at 299 (emphasis in original). Thus,

- 15 -

although federal policy favors arbitration, "federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its extended scope." *Fuller v. Guthrie*, 565 F.2d 259, 261 (2d Cir. 1977).

Relatedly, Defendant is not otherwise a non-signatory-beneficiary under the TOU in a manner that could broaden the scope of the arbitration provision. In fact, the supposed consent for the calls to Plaintiff in the TOU does not mention Suntuity. As a matter of clear TCPA law, this supposed consent for calls is not and cannot be consent for calls on behalf of Suntuity, the *seller* for purposes of the telemarketing calls to the Plaintiff.

The TCPA and its accompanying regulations prohibit sellers, such as Suntuity Solar, from making telemarketing calls without prior express consent. 47 C.F.R. § 64.1200(c)(2)(ii). That prior express consent "must be evidenced by a signed, written agreement *between the consumer and seller". Id.* The "opt-in" disclosure at the third-party website supplied by Suntuity does not provide for prior express written consent because the seller—Suntuity—is not a party to or named in it. See *Mantha v. Quotewizard.com, LLC*, No. 19-12235-LTS1, 2021 U.S. Dist. LEXIS 245059, at *23-24 (D. Mass. Dec. 3, 2021) ("The consent form that defendant claims supplied plaintiff's consent was not TCPA-compliant. First, the form does not mention defendant or its clients by name. … The form also contained a telephone number for an entity that was not associated with Snappy Auto, AutoInsurQuotes.com, or defendant. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (stating that prior express consent 'must be evidenced by a signed, written agreement *between the consumer and seller'* (emphasis

- 16 -

added)); *Mattson v. New Penn Fin.*, No. 3:18-cv-00990, 2020 U.S. Dist. LEXIS 197955, at *12 (D. Or. Oct. 25, 2020) ('[T]he regulations promulgated under the TCPA require the consumer's prior express consent to receive calls from the *specific* telemarketer that makes the call before the telemarketer can call a number listed on the DNCR.' (emphasis added) (citing 47 C.F.R. § 64.1200(c)(2)(ii))).").

Therefore, there is no basis to conclude that Defendant is a signatory or non-signatory-beneficiary of the arbitration agreement or any other agreement that would have resulted from the website visit, and Defendant's motion to compel should be denied.

### E.    Defendant is Not Entitled to Compel Arbitration Under an Equitable Estoppel Theory

Likely recognizing that the arbitration provision does not actually include them, Defendant argues that arbitration should be compelled under the TOU's arbitration provision based on an estoppel theory.  However, Defendant's estoppel theory is based on a mischaracterization of the applicable law.

The Court must turn to state law to determine whether equitable estoppel applies to allow a non-signatory to compel arbitration. *Kroma Makeup EU LLC v. Boldface Licensing & Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017). Under Florida's law of equitable estoppel, a non-signatory seeking to compel a signatory to arbitrate must satisfy a "two-step framework: (1) the non-signatory must show the signatory's reliance on the agreement and (2) the arbitration clause must cover the dispute." *It Works Mktg., Inc. v. Melaleuca, Inc.*, No. 8:20-CV-1743, 2021 WL 1650266,

at *5 (M.D. Fla. Apr. 27, 2021) citing *Kroma* 845 F.3d at 1354; *see also Beltre v. Micron Devices, LLC*, No. 18-20399-CIV, 2018 WL 6614284, at *2 (S.D. Fla. Dec. 13, 2018) ("Defendant must show that Plaintiff is relying on the agreement to assert its claims against them and that the scope of the arbitration clause covers the dispute.").

"[A] claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy." *Leidel v. Coinbase, Inc.*, 729 F. App'x 883, 886-87 (11th Cir. 2018); *see also It Works Mktg.,* 2021 WL 1650266, at *4 ("A signatory does not rely on a contract to assert its claims against a non-signatory when the signatory's claims rely on obligations otherwise imposed by law…If a law outside of the contract places duties on the non-signatory, then any alleged breaches flow from that law—not the contract."); *Torres v. Starbucks Corp.*, No. 8:20-CV-1311-CEH-TGW, 2021 WL 964219, at *5 (M.D. Fla. Mar. 15, 2021)(finding an insufficient nexus between plaintiff's claims grounded in his "statutory right to be notified of the right to continued healthcare coverage after the termination of his wife's employment" and his wife's employment contract to equitably estop him from challenging arbitration demand).

In *Coinbase*, the Eleventh Circuit evaluated whether plaintiffs' causes of action based on a fraudster's use of Coinbases's website arose from a user agreement related to that website use. Coinbase sought to equitably estop the plaintiffs from challenging its request to compel arbitration of plaintiffs' claims based on its user agreement. The Eleventh Circuit determined that because plaintiffs' claims were based on independent duties created by the Bank Secrecy Act and Florida tort law, they did not bear a

"significant relationship" to the user agreement containing the arbitration clause to allow equitable estoppel. *Id.* at 888.

Similarly, in *It Works* 2021 WL 1650266, the plaintiff filed suit for trade secret misappropriation and tortious interreference with its business relationship with its distributors. *Id.* at *2. The non-signatory defendant to the distributors' agreements sought to compel arbitration based on the distributors' agreements with plaintiff and the doctrine of equitable estoppel. *Id.* The court correctly denied that request ruling that "[n]one of [plaintiffs'] four claims against [defendant] rely on the Distributor Agreement because each claim arises from alleged breaches of duties otherwise imposed by law." *Id.* at *5.

Like *Coinbase* and *It Works* the instant dispute does not arise out of the TOU itself. Indeed, the Eleventh Circuit has expressly held that, as a general matter, TCPA claims like the Plaintiff's do not arise out of or relate to underlying contracts like the TOU. *See Gamble*, 735 F. App'x at 666-67 (11th Cir. 2018) (finding source of plaintiff's right not to receive unwanted text messages was the TCPA, not the contract). ***And this is only more true here because the TOU does not even purport to obtain consent for calls by or on behalf of Defendant, the seller under the TCPA for purposes of the calls at issue on Suntuity's behalf***. Accordingly, equitable estoppel is unavailable to Defendant.

Accordingly, any claim by Defendant that equitable estoppel is available is completely meritless because Plaintiff's TCPA claim does not arise from, but instead is wholly independent of, the website operator's TOU, particularly because Suntuity

has no right to rely on the purported consent associated with the website visit. *Torres*, 2021 WL 964219, at *14 (denying motion to compel arbitration under an estoppel theory where the plaintiff's claim was within the arbitration provision's scope, because the plaintiff's claim did not arise from the contract containing the arbitration provision).

**DEFENDANT'S MOTION TO STAY
OR BIFURCATE DISCOVERY ALSO FAILS**

There is no valid basis for staying or bifurcating discovery in this case months after it commenced. In fact, each of those requests is based on the same purported website visit as the motion to compel, and fails for the exact same reasons. There is no evidence of the website visit or that if it occurred it resulted in Plaintiff providing consent for a call from Suntuity specifically. Suntuity has had months in discovery to obtain evidence of this. But it hasn't. And there is no reason to believe that it will, particularly given that the company behind the website at issue does not appear to be operational.

**CONCLUSION**

Ultimately, Defendant's motions are meritless. Defendant waived the right to compel arbitration. But, even if it didn't, it is not a party to the arbitration agreement or website's consent provision. And in the absence of even a colorable basis for Defendant's motion, the motion to stay and bifurcate discovery mid-stream should likewise be denied.

Dated: November 28, 2023      Respectfully submitted,

*/s/ Avi R. Kaufman*
Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 S. Dixie Hwy, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881
*Attorneys for Plaintiff and those similarly situated*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 28, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Avi R. Kaufman*

- 21 -